IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOSEPH S.,

        **Plaintiff,**

v.                                    Civil Action 3:22-cv-306
                                      Judge Michael J. Newman
                                      Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Joseph S., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 7) and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

On June 18, 2020, Plaintiff protectively filed an application for DIB alleging disability beginning August 15, 2016, due to "can hardly walk," "can barely lift legs," "no control over feet," nerve damage in both feet, slipped discs, degenerative disc disease, chronic pain, and "numbness in left leg." (R. at 160–66, 186). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on May 11, 2021. (R. at 33–70). The ALJ denied Plaintiff's application in a written decision on September 21, 2021. (R. at 12–32). When the Appeals Council denied Plaintiff's request for review, that denial became the final decision of the Commissioner. (R. at 1–6).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record (Doc. 6), and the parties briefed the issues (Docs. 7, 8, 9). The matter is ripe for review.

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as follows:

[Plaintiff] testified he measures 6' and weighs 280 pounds. He has been unable to work after a back injury incurred at work in August 2016 which is still being disputed with worker's compensation. That injury required [Plaintiff] to use a cane to ambulate as of July 2018 and surgery the following month which improved back pain but not radicular symptoms in the bilateral lower extremities consisting of pain, numbness, and weakness and resulting in multiple falls. He can sit no longer than 30 minutes before needing to alternate positions. He can walk with his cane for about 2 hours with breaks and can stand only a few minutes. He needs to lay down multiple times for at least 10 minutes throughout a typical day for pain relief. Treatment has included physical therapy and medications which affects his cognition. More recently, [Plaintiff] has also started taking thyroid medication.

[Plaintiff] has an active driver's license with no restrictions and though he has difficulty driving because of limited range of motion, pain, and numbness of the legs and feet, he is able to regularly drive each week for grocery shopping.

(R. at 17).

### B. Relevant Medical Evidence

The ALJ also discussed Plaintiff's medical records and symptoms:

[Plaintiff] suffered a work-related injury in August 2016 resulting in reported low back pain with radiation into the bilateral lower extremities (Exhibits 1D at 1/3F at 3). Initially, symptoms associated with lumbar degenerative changes and disc protrusion (Exhibit 1F at 32) were treated by conservative measures including injections, chiropractic manipulation, and physical therapy (Exhibits 1F/2F/7F at 36). New findings on subsequent imaging, however, revealed a herniated disc "putting direct contact and pressure on the right S1 nerve root which directly correlate[d] to the [[Plaintiff]'s] complaints and examination findings" (Exhibit 2F at 6). Consequently, [Plaintiff] underwent a right lumbar microdiscectomy at L5-S1 to address back pain radiating down his right leg in August 2018 (Exhibit 5F at 22-23). He appears to have had good postsurgical results, certainly at the start. He was "doing well" and was encouraged to increase activities as tolerated six weeks later when customary physical therapy was ordered (Exhibits 3F/4F/5F at 7) and continued to successfully progress. Three months status post, right leg pain had

2

"significantly" improved, and low back and mild numbness/tingling of the right foot continued improving. [Plaintiff] had good posture and his incision was healed. Straight leg raise was negative, and muscle strength tested as 5/5 throughout (Exhibit 5F at 6). Similar postoperative examination findings are noted six months status post in March 2019 (*id.*).

[Plaintiff] did allege multiple falls in June 2019 due to limited range of motion and paresthesia of the bilateral lower extremities, at which time he was 10 months status post surgery. However, objective examination findings again revealed 5/5 muscle strength testing, normal reflexes, and steady gait (Exhibit 5F at 5). Postoperative imaging of the lumbar spine looked "great" and showed no signs of compression (Exhibit 5F at 3/7F at 64). Although the etiology of [Plaintiff]'s complaints was described as "unclear" (Exhibit 5F at 5), he has continued to allege postoperative low back pain and diffuse neuromuscular pain and weakness in his legs resulting in an unsteadiness on his feet (Exhibits 9F at 28/13F at 6/14F at 4) and reportedly requiring the use of a cane at times (Exhibit 8F at 12). Nevertheless, EMG nerve conduction studies of the lower extremities, revealing chronic right L4-5 radiculopathy, have shown no evidence of ongoing motor denervation or peripheral neuropathy (Exhibit 14F at 5). A vascular ankle brachial index (ABI) was performed for clinical indication of claudication (Exhibit 9F at 84), but was normal bilaterally (Exhibit 9F at 76). Likewise, a venous Doppler ultrasound of the bilateral lower extremities was normal (Exhibit 9F at 60). A recent scan taken of [Plaintiff]'s lumbar spine in January 2021 revealed arteriosclerotic disease (Exhibit 10F at 26); otherwise, repeat imaging has been nonacute and stable with no new findings (Exhibits 9F at 40, 78/10F at 27). Though "complaints of weakness and "loss of motor function of [the] entire leg when hip is in flexion" do not match up" with these imaging findings, [Plaintiff] was referred for neurological and neurosurgical evaluation (Exhibit 9F at 52-53) which he declined (Exhibit 9F at 28). Instead, postoperative pain control measures have remained conservative consisting of physical therapy (Exhibits 8F/11F) and injections and pain and muscle relaxant medications (Exhibits 6F/9F).

Treatment records also show some evidence of multilevel degenerative changes in [Plaintiff]'s cervical spine. These changes were described as a moderate level of severity, and these studies do not show evidence of nerve root compression or other neurological involvement (Exhibits 9F at 62/10F at 25/13F at 26).

[Plaintiff] also has nonalcoholic hepatic steatosis (Exhibit 10F at 7). However, this condition appears to be only routinely monitored (Exhibit 9F) as lab findings have been within normal limits (Exhibit 9F at 18), and [Plaintiff] was noted to be asymptomatic (Exhibit 5F at 24).

(R. at 18–19).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through December 31,

3

2021 and has not engaged in substantial gainful activity since August 15, 2016, the alleged onset date. (R. at 18). The ALJ determined that Plaintiff has the following severe impairments: lumbar degenerative disc disease and displacement lumbar disc with radiculopathy status post surgery, cervical degenerative disc disease, arteriosclerotic disease, neuropathy, claudication, nonalcoholic steatohepatitis (NASH), and obesity. (*Id.*). Still, the ALJ found that Plaintiff's impairments, either singly or in combination, do not meet or medically equal a listed impairment. (R. at 20).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ concluded:

[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: (1) standing/walking 4 hours and sitting at least 6 hours in an 8-hour workday; (2) use of a cane for prolonged ambulation, meaning walking for 30 minutes; (3) frequent use of the bilateral lower extremities for pushing/pulling and operating foot controls; (4) occasionally climbing ramps and stairs, balancing (as defined by the defined by the *Selected Characteristics of Occupations (SCO)*, stooping, kneeling, crouching, and crawling; (5) never climbing ladders, ropes, or scaffolds; (6) frequent use of the bilateral upper extremities for handling and fingering; (7) occasional exposure to vibration; and (8) no work at unprotected heights on in the vicinity of uncovered unguarded moving machinery.

(R. at 21).

Relying on the vocational expert's testimony, the ALJ found that Plaintiff is unable to perform his past relevant work as a pipe fitter or construction worker. (R. at 25–26). However, considering his age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform at the light exertional level, such as a bench assembler, mail room clerk, or office helper. (R. at 26–27). The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since August 15, 2016. (R. at 27–28).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

In his Statement of Errors, Plaintiff contends that the ALJ reversibly erred in evaluating his pain complaints and symptom severity and in finding that he is capable of sustaining full-time competitive light exertion work. (Doc. 7 at 5–8). In particular, Plaintiff says that he is not capable of "sustaining four hours of walking and standing in a competitive work environment[,]" and the ALJ's finding otherwise is not supported by substantial evidence. (*Id.* at 8). The Commissioner counters that the ALJ properly considered the record as a whole, including the objective medical evidence in the form of clinical exam findings and imaging results, the effectiveness of treatment,

5

any aggravating factors, his daily living activities, and the administrative findings of two state agency medical consultants. (Doc. 8 at 4–12). The Undersigned agrees that the ALJ's decision is supported by substantial evidence.

A plaintiff's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). The RFC assessment must be based on all the relevant evidence in a plaintiff's case file. *Id.*; s*ee also* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

When a plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, *3 (March 16, 2016).[1] First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-cv-

---

[1] SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). Nonetheless, it remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as a whole. *See id.* Therefore, "absent a compelling reason," an ALJ's credibility determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, the ALJ found that Plaintiff could walk or stand for up to four hours in an eight-hour workday. (R. at 21). Plaintiff says the "ALJ cited no evidence showing that [he] could sustain walking or standing that long with no rest breaks." (Doc. 9 at 4). At base, Plaintiff believes that the ALJ should have accepted his testimony that he could walk for only two hours, with frequent breaks. (*See* Docs. 7, 9). This, he says, is supported by objective medical evidence, and the ALJ's determination that he could walk or stand for up to four hours in the day with only normal work breaks is erroneous. (*Id.*).

When discussing Plaintiff's subjective complaints, the ALJ determined:

After careful consideration of the entire record, I find that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the extent of limitation alleged is not consistent with objective medical evidence or clinical findings. [Plaintiff]'s documented physical symptoms limit his exertional capabilities at times. On the other hand, there is some evidence to show that symptoms positively respond to treatment: physical therapy improves mobility to some degree and helps to keep "symptoms at bay." Injections also help to relieve any discomfort along with medication (Exhibits 3F at 79/9F at 34).

[Plaintiff] does have a reduced ability to stand and walk, and must use a cane for prolonged ambulation. [Plaintiff]'s gait was mildly antalgic in November 2016, and noted to be normal during treatment in December 2016 through January 2018 (Exhibits 1F and 2F at 10). By December 2018, [Plaintiff] presented with a slow gait, limp, and antalgic lean (Exhibit 2F at 3). The record also references gait training and his gait was described as steady in June 2019 (Exhibit 5F at 5). [Plaintiff]'s gait problems were discussed in 2019 treatment notes (Exhibits 7F and

>11F). However, in August 2020 and January 2021 his coordination and gait were noted to be normal (e.g. Exhibit 9F at 25 and 31). He was noted to have gait instability in March 2021, and he was prescribed a handicapped placard (Exhibits 12F and 13F at 1). In April 2021, [Plaintiff] presented for treatment after falling from a stool while performing home repairs (Exhibit 13F). On examination, he had normal range of motion of the neck, good range of motion in all major joints, normal motor functioning, and normal sensory function (Exhibit 13F at 9). Imaging of the left shoulder was unremarkable and imaging of the cervical spine revealed degenerative changes but was noted to be stable (Exhibit 1F at 10). At that time, the attending physician noted no significant findings on examination with diagnoses of acute strain of the neck muscle and contusions (Exhibit 13F at 11-12).
>
>In the function report, [Plaintiff] indicated he used a cane/brace when walking at least an hour (3E/7). Elsewhere [Plaintiff] noted using a cane when walking twenty minutes, and he testified he continues to use a cane. Given the evidence through the hearing level, [Plaintiff] would require a cane for ambulation if walking over thirty minutes. Additionally, he can only be on his feet for standing/walking four hours in an 8-hour workday with normal breaks. Moreover, he has reduced ability to push, pull, and operate foot controls as detailed above. He would be unable to climb ladders, ropes, or scaffolds and he would be unable to work at unprotected heights or in the vicinity of uncovered unguarded moving machinery. As recently as April 2021, [Plaintiff] presented as neurologically intact with no significant findings noted on physical examination (Exhibit 13F at 11). Such findings are consistent with evidence that [Plaintiff] retains sufficient physical capacity for some daily living tasks like shopping or doing light housework (Exhibit 3E), or washing his car (Exhibit 10F at 22).
>
>Therefore, reasonable restrictions in exertional capabilities (i.e., restricting [Plaintiff] to "light" exertion) and nonexertional capabilities (e.g., postural restrictions and safety precautions) have been included in the residual functional capacity assessment found to be applicable herein. [Plaintiff] has not presented objective medical evidence or clinical findings to establish a medically determinable physical or mental impairment that would result in any greater degree of limitation. The preponderance of the evidence does not establish greater limitations than detailed above.

(R. at 24–25).

At the outset, the Court notes that Plaintiff suggests that the ALJ's four-hour standing/walking component of the RFC is inconsistent with her questioning of Plaintiff at the hearing.  (Doc. 7 at 7) (citing R. at 53) ("The ALJ even asked [Plaintiff] at the hearing if he could 'walk for two hours, with breaks.'  Why did the ALJ not ask if he could walk for four hours? . . .

8

[Plaintiff] indicated that after about two hours, his legs are so fatigued and he is 'done.'"). But the ALJ's question must be viewed in context. The question came as the ALJ was confirming certain representations Plaintiff had made in a function report that he had completed as part of his disability application. (*See* R. at 51–54). In that report, Plaintiff indicated that he used a cane when he knew he was going to do a lot of walking, which he defined as one to two hours of walking. (R. at 201). He also indicated that he could walk ten to fifteen minutes on even terrain without taking a break, but then would require a two-to-five-minute break before resuming walking. (R. at 200). The ALJ, in an attempt to "understand[ ] the extent to which things may or may not have changed since" Plaintiff completed the report, repeated his representations before asking, "So, are you still able to walk for two hours, with breaks?" (R. at 52–53). To which Plaintiff said yes.

In other words, the ALJ was simply confirming Plaintiff's testimony about his own perceived capabilities. Asking that question does not mean that the ALJ was required to accept the testimony at face value. Nor was she required to ask Plaintiff if he was capable of walking and standing for up to four hours—a question to which she could safely presume the answer would be "no" given his contrary testimony. Rather, it was the ALJ's task to determine whether Plaintiff's testimony was credible and whether his medically determinable impairments could reasonably be expected to cause the degree of exertional limitations he described. She ultimately decided that Plaintiff was capable of more than he suggested and supported her conclusion with substantial evidence.

To begin with, the state agency physicians who assessed Plaintiff's physical condition based upon the medical record—Elizabeth Das, M.D. and Mehr Siddiqui, M.D.—determined that Plaintiff could stand or walk for six hours in an eight-hour workday and four hours in an eight-

9

hour workday, respectively. (R. at 75, 82). "In giving deference to [Plaintiff's] most prevalent issues involving orthopedic and neuropathic pain and some gait instability," the ALJ adopted Dr. Siddiqui's more restrictive assessment of four hours. (R. at 22–23). Despite some evidence of gait instability, the ALJ noted that throughout the record, there were also findings of normal gait, normal motor and neurological functioning, and unremarkable or stable imaging:

> [Plaintiff] does have disc herniation and chronic lumbar radiculopathy affecting both lower extremities. Yet, straight leg raise has not been uniformly positive (Exhibits 6F at 6 / 14F at 4). Throughout the record, there are findings of normal gait and coordination including prior to surgery (Exhibits 1F / 2F at 10 / 9F at 18, 25, 31, 71, 117). Recall that nerve conduction studies show no evidence of motor denervation or peripheral neuropathy. An ABI study also was normal as were findings from a venous ultrasound. Degenerative changes of the lumbar spine are stable. Overall, normal reflexes and normal motor and sensory function are noted on physical examination (Exhibits 9F / 10F / 13F). Therefore, I find that limiting [Plaintiff] to a reduced range of light work is the most plausible estimation of his physical capabilities while also accounting for bouts of fatigue from pain (Exhibit 9F at 28) and/or diminished liver functioning as well as any restricted range of motion of the lumbar spine (Exhibit 9F at 31) aggravated by [his] obese physical condition (Exhibit 1F at 7).

(R. at 23).

In addition to this reasoned consideration of objective medical evidence and Plaintiff's aggravating factors, the ALJ also discussed Plaintiff's alleviating treatment and daily activities. In particular, the ALJ noted that Plaintiff's post-surgical treatment of injections, chiropractic manipulation, and physical therapy was conservative and effective. (R. at 18) (citing R. at 498 (progress notes from three months after surgery noting that Plaintiff was doing well overall, had significant improvement in right leg pain, improving pain in low back, encouraging Plaintiff to increase activity and continue physical therapy)); *see also* (R. at 496–98) (noting similar assessments at six and ten months after surgery). Elsewhere, the ALJ found that in addition to benefits from physical therapy, "[i]njections also help to relieve any discomfort along with medication." (R. at 25) (citing R. at 717) (back pain follow-up appointment, noting that "shot

10

helped relieve the discomfort along with the medication"). And the ALJ stated that her RFC findings were consistent with "evidence that [Plaintiff] retains sufficient physical capacity for some daily living tasks like shopping or doing light housework, or washing his car." (R. at 25) (citing R. at 195–204 (Plaintiff self-reporting that he did shopping once or twice a week for up to two hours and could complete light housework), R. at 824 (treatment notes for visit at which Plaintiff reported that he was washing his car and slipped on ice)). In sum, the ALJ relied upon substantial evidence and directly applied many of the 20 C.F.R. § 404.1529(c)(3) factors for evaluating Plaintiff's subjective symptoms.

Plaintiff cites some parts of the record he says support his subjective pain complaints, but none of this evidence was ignored by the ALJ, or otherwise undermines the ALJ's conclusion. For instance, he notes physical therapy notes from 2019 which show findings of "moderate to severe restriction of flexibility, decreased hip flexion, tenderness and pain to palpation with wincing and withdrawal, and absent S1 achilles tendon reflex/sensory integrity." (Doc. 7 at 5); (*see* R. at 836–968). Notably, these records were from the period following Plaintiff's August 2018 surgery. The ALJ noted—as detailed above—that though Plaintiff had difficulties during this period, his post-surgical progress notes at the Cleveland Clinic showed continuing improvement with physical therapy at three, six, and ten months after surgery. (*See* R. at 496–98). Similarly, she said the 2019 physical therapy notes demonstrated Plaintiff's gait problems, but noted that his gait showed improvement by 2020 and 2021. (R. at 25).

Additionally, Plaintiff cites an evaluation by Timothy Yoon, M.D. which found that Plaintiff had pain, positive straight leg raise testing, and some limited mobility, particularly on his right side. (Doc. 7 at 5–6) (citing R. at 554–55). The ALJ acknowledged this record, but simultaneously acknowledged that it was contradicted by other parts of the record—significantly,

11

by Dr. Yoon himself. The ALJ wrote that the "straight leg raise has not been uniformly positive." (R. at 23) (citing R. at 554 (Dr. Yoon noting during orthopedic consultation on February 20, 2020 that "[s]traight leg raise on the right reproduces a pathologic roll test and radicular pain down to his right distal leg."), 1000 (Dr. Yoon noting physical exam findings on the next day—February 21, 2020—showed negative straight leg raise test)).

Finally, Plaintiff notes that he was prescribed a handicap placard in March 2021 due to nerve damage and gait instability, and that he visited the emergency room in April 2021 because he fell off a stool. (Doc. 7 at 6–7). Regarding the issuance of the handicap placard, the ALJ was unpersuaded, because the provider did "not even indicate the reason for the placard, and there is otherwise no compelling evidence in the record that shows [Plaintiff's] mobility is so significantly affected that he lacks the ability to stand and walk for sufficient periods to perform a reduced range of light work." (R. at 23) (citing R. at 969) (stating, without elaboration, "It is my medical opinion that [Plaintiff] requires a disability parking placard with an expiration date of 3/12/2022"). Likewise, the ALJ noted that Plaintiff sought treatment in April 2021 after falling from a stool while completing home repairs, but discussed that he then presented with:

> normal range of motion of the neck, good range of motion in all major joints, normal motor functioning, and normal sensory function (Exhibit 13F at 9). Imaging of the left shoulder was unremarkable and imaging of the cervical spine revealed degenerative changes but was noted to be stable (Exhibit 1F at 10). At that time, the attending physician noted no significant findings on examination with diagnoses of acute strain of the neck muscle and contusions (Exhibit 13F at 11-12).

(R. at 25).

At base, the ALJ was simply not persuaded that Plaintiff's limitations in standing and walking were as severe as he alleged. Her conclusions were supported by the findings of the state agency physicians, objective medical evidence, and information about Plaintiff's aggravating factors, alleviating treatment, and daily activities. This is substantial evidence, and while Plaintiff

12

alleges that the ALJ overlooked certain records, the opinion instead shows a thorough engagement with all parts of the record. Accordingly, the Undersigned finds Plaintiff's assignment of error without merit.

### IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 7) and **AFFIRM** the Commissioner's decision.

### V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: July 5, 2023  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

13